**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **MANGOCEUTICALS, INC.,** | § | |
| | § | |
| **Plaintiff/Counter-Defendant,** | § | |
| | § | |
| - vs - | § | **CASE NO. 3:24-cv-03116-B** |
| | § | |
| **ACCELERATED DIGITAL MEDIA, LLC** | § | |
| | § | |
| **Defendant/Counter-Plaintiff.** | § | |
| | § | |

### ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM TO PLAINTIFF'S ORIGINAL PETITION

Accelerated Digital Media, LLC ("Defendant" or "ADM") files this Answer, Affirmative Defenses, and Counterclaim to Plaintiff's Original Petition to the United States District Court for the Northern District of Texas, Dallas Division, respectfully showing as follows:

### LEVEL

1.    Plaintiff intends to conduct discovery under Level 3 of Rule 190.4 of the Texas Rules of Civil Procedure and affirmatively pleads that this suit does not fall under the expedited-actions process of Rule 169, because Plaintiff seeks damages in excess of $250,000, excluding interest, statutory or punitive damages and penalties, and attorney fees and costs.

**ANSWER:**    The allegations in this Paragraph consist of Plaintiff's statement of an intent to conduct discovery under Level 3 of Rule 190.4 of the Texas Rules of Civil Procedure, to which no response is required. To the extent that the Court requires a response, the referenced Texas Rule of Civil Procedure speaks for itself and ADM anticipates discovery to be conducted in accordance with the Federal Rules of Civil Procedure or this Court's Order. ADM denies that Plaintiff is entitled to the monetary relief sought.

## RELIEF

2.       Plaintiff seeks only monetary relief of over $1,000,000.  Tex. R. Civ. P. 47(c)(4).

**ANSWER:**    The allegations in this Paragraph consist of Plaintiff's statement of the relief sought, to which no response is required. To the extent that the Court requires a response, ADM denies that Plaintiff is entitled to the monetary relief sought.

## PARTIES

3.       Plaintiff is a Texas limited liability company with its principal place of business in Dallas County, Texas.

**ANSWER:**    ADM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

4.       Defendant ACCELERATED DIGITAL MEDIA, LLC is a Delaware corporation that may be served with process by serving its registered agent, MS Registered Agent Services Inc., 191 North Wacker Drive, Suite 1800, Chicago, Illinois 60606-1631.

**ANSWER:**    ADM denies that it is a Delaware corporation. ADM admits that it is a limited liability company organized under the laws of the State of Delaware. ADM admits that its sole member is Tellef Lundevall, who is a citizen of Illinois. Therefore, ADM is a citizen of Illinois. ADM admits that it may be served with process by serving the referenced registered agent.

## JURISDICTION AND VENUE

5.       This Court has subject-matter jurisdiction over this case under its general jurisdiction as conferred by the Texas Constitution because the amount in controversy is within the Court's jurisdictional limits, and because no other court has exclusive jurisdiction over this case. Defendant purposefully availed itself of the privilege of conducting activities with the State of Texas, including Dallas County.

**ANSWER:**     The allegations in this Paragraph consist of legal conclusions to which no response is required. To the extent that the Court requires a response, ADM admits only that it removed this case from the 298th Judicial District Court of Dallas County Texas under Case No. DC-24-18881 on the grounds of diversity jurisdiction. ADM denies all remaining allegations.

6.     Venue is proper in Dallas County pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 15.002(a), et seq., because all or a substantial part of the events or omissions giving rise to this claim occurred in Dallas County, Texas.

**ANSWER:**     Denied. The parties entered into a Master Services Agreement containing a forum selection clause that states: "[a]ny legal suit, action or proceeding arising out of or relating to this Agreement [the MSA] shall be commenced in the federal or state courts in the County of Cook, Illinois, and each Party hereto irrevocably submits to the exclusive jurisdiction and venue of any such court in any such suit, action or proceeding."

## FACTS

7.     Plaintiff Mangoceuticals, Inc. ("Plaintiff") is a provider of men's health and wellness products and services via a secure telemedicine platform. The company is publicly traded on NASDQ. Plaintiff relies on its digital marketing to reach customers and maintain and grow its business.

**ANSWER:**     ADM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

8.     On October 16, 2023, Plaintiff and Defendant Accelerated Digital Media, LLC ("Defendant") entered into a Master Services Agreement ("MSA"). Under the MSA, Defendant was to provide digital marketing and digital paid media management as Plaintiff's exclusive service provider of digital paid media.

**ANSWER:**    ADM admits only that Plaintiff and ADM entered into the MSA on October 16, 2023 that contained a statement of work where ADM agreed to provide digital marketing and digital paid media management of Plaintiff's brand and products.  ADM denies all remaining allegations.

9.    Prior to the execution of the MSA, Defendant provided an audit of Plaintiff's marketing and proposed edits to improve Plaintiff's ad-buying strategy for healthcare-related products. During the parties' discussions, Defendant made material representations to Plaintiff. Defendant's representatives touted Defendant as an expert not only in the digital marketing and digital media management space but specifically in marketing Men's Health and ED medication. Defendant made the proposal with the intent that Plaintiff enter into the MSA. Plaintiff entered into the MSA in reliance on the statements and promises made by Defendant in its proposal.

**ANSWER:**    ADM admits only that it provided an audit of Plaintiff's marketing and proposed edits. ADM denies that it or any of its representatives made any representations to Plaintiff that were not contained in the MSA. ADM denies all remaining allegations.

10.    Plaintiff further relied on these statements and incurred expenses based on recommendations and implementations that Defendant instructed Plaintiff to do after the MSA was executed.

**ANSWER:**    Denied.

11.    During the course of the MSA, Plaintiff repeatedly alerted Defendant of technical, tracking and recapping errors in Plaintiff's account. Plaintiff's accounts were repeatedly flagged and shut down by marketing platforms as a result of Defendant's negligence and incompetence. In December 2023, Plaintiff's Meta account was shut down for approximately 2 weeks due to Plaintiff's non-compliance with the advertising policy. In January 2024, Plaintiff's YouTube

campaign was flagged. Plaintiff's Google and YouTube ads were restricted by the platforms. In March 2024, Plaintiff's Google account was shut down. Despite multiple complaints made by Plaintiff, Defendant has failed to restore Plaintiff's marketing effectiveness. As a result, Plaintiff's stock plummeted, resulting in damages in an amount within the jurisdictional limits of this Court.

**<u>ANSWER:</u>**     ADM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph related to Plaintiff's Meta account, Plaintiff's Google account, Plaintiff's YouTube campaign, and Plaintiff's Google and YouTube ads. ADM denies all remaining allegations.

**BREACH OF CONTRACT**

12.     Plaintiff has complied with all material terms and conditions of the MSA. Defendant has failed to provide services as set forth in the MSA. As a result, Plaintiff suffered actual damages in an amount within the jurisdictional limits of this Court.

**<u>ANSWER:</u>**     Denied.

**FRAUD IN THE INDUCEMENT**

13.     Prior to and at the time that the parties entered into the MSA, Defendant, by and through its employees and agents acting on its behalf, made certain representations to Plaintiff, with the intent that Plaintiff rely upon them by entering into the MSA. These misrepresentations were material. Defendant knew the statements were false. Plaintiff justifiably relied on the statements by entering into the MSA. As a result, Plaintiff suffered losses in an amount within the jurisdictional limits of this Court.

**<u>ANSWER:</u>**     Denied.

**COMMON LAW FRAUD**

14.     After the MSA was executed, Defendant's representatives continuously made false representations and recommendations to Plaintiff in hopes of covering up their lack of expertise

on knowledge. These misrepresentations were material. Defendant knew the statements were false. Defendant intended for the Plaintiff to rely on the statements. Plaintiff relied on the statements. Plaintiff suffered losses relying on the statements.

**ANSWER:**     Denied.

## NEGLIGENT MISREPRESENTATION

15.     Alternatively, Defendant made representations and recommendations to Plaintiff in the course of Defendant's business and in a transaction in which it had a financial interest. These representations were false and/or misleading and made with the intent that Plaintiff rely upon them. Plaintiff relied on the representations and recommendations to its detriment. The representations made by Defendant were material. The statements were untrue and made knowingly or, in the alternative negligently. Plaintiff justifiably relied on Defendant's misrepresentations when it began procuring the products at issue, when it entered into the MSA, and when it performed its obligations under the MSA. As a result, Plaintiff sustained damages within the jurisdictional limit of this Court.

**ANSWER:**     Denied.

## REQUEST FOR DECLARATORY JUDGMENT

16.     Plaintiff asserts a claim under pursuant to the Texas Declaratory Judgments Act, Sec.37.001 *et. seq.*, Texas Civil Practice and Remedies Code, to have its rights, status and other legal relationships established by a court of competent jurisdiction. Plaintiff now asks the Court for a declaration that the MSA was procured by fraud on the part of Defendant and is, therefore, null and void.

**ANSWER:**     The allegations in this paragraph contain a request for declaratory judgment to which no response is required. To the extent that the Court requires a response, denied.

17.     Specifically, Plaintiff seeks a declaration from the Court that:

a.    the MSA was procured by fraud on the part of Defendant;

b.    the MSA is invalid;

c.    the MSA is null and void; and

d.    the amount of economic and non-economic damages which Plaintiff is entitled to recover from Defendant.

**ANSWER:**    The allegations in this paragraph contain a request for declaratory judgment to which no response is required. To the extent that the Court requires a response, denied.

18.    Pursuant to §37.009 of the Texas Civil Practice and Remedies Code, Plaintiff seeks all costs and reasonable and necessary attorneys' fees, as are equitable and just, which are incurred or which may be incurred in this matter.

**ANSWER:**    Denied.

## DAMAGES

19.    As a result of Defendant's wrongful actions, Plaintiff sustained damages in an amount within the jurisdictional limits of this Court.

**ANSWER:**    Denied.

20.    Plaintiff has incurred reasonable attorney's fees in the prosecution of his claims herein, recoverable pursuant to the terms of the MSA and the Texas Civil Practice & Remedies Code.

**ANSWER:**    Denied.

## JURY DEMAND

21.    Plaintiff demands a jury trial and hereby tenders the jury fee.

**ANSWER:**    The allegations in this paragraph consist of a demand for a jury trial to which no response is required. To the extent that the Court requires a response, ADM does not contest

Plaintiff's demand for a jury trial and ADM lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's tender of a jury fee.

**PRAYER**

Plaintiff MANGOCEUTICALS, INC. prays that Defendant ACCELERATED DIGITAL MEDIA, LLC be cited to appear and answer, and on final trial hereafter, the Plaintiff have judgment against Defendants, jointly and severally, for the following:

(a) Actual damages in an amount within the jurisdictional limit of the Court;

(b) Costs of court;

(c) Prejudgment and post-judgment interest at the highest lawful rate; and

(d) Such other and further relief, both general and special, to which Plaintiff may show its entitled.

**ANSWER:**    Denied.

**AFFIRMATIVE DEFENSES**

ADM has not yet had the opportunity to complete its investigation and discovery in this matter and thereby relies on the following defenses as may prove applicable after discovery and at trial. By listing any defense or factual matter here, ADM does not assume any associated burden of proof:

1.     Plaintiff's claims are barred, in whole or in part, by the doctrines of contributory negligence, comparative negligence, and/or the negligence of Plaintiff that contributed in whole or in part to the injury of which it complains.

2.     Plaintiff failed to state a claim upon which relief can be granted.

3.     Plaintiff's claims are barred by the disclaimer of warranties, limitation of liability, and/or the indemnity agreement contained in the MSA.

4.     ADM has not caused any of the damages alleged by Plaintiff, and any alleged damages of Plaintiff (if any), would have been caused by subsequent intervening causes.

5.    Plaintiff has failed to mitigate its damages.

6.    Plaintiff's claims are barred because of its prior material breach of the MSA.

7.    Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to perform and/or tender performance under a valid contract.

8.    Plaintiff's claims are barred, in whole or in part, because Plaintiff has unclean hands.

9.    ADM is not liable for Plaintiff's damages, if any, because ADM's conduct at all times complied with, or was in good faith conformity with, the MSA and all applicable laws and regulations.

10.    Plaintiff's damages, if any, were not proximately caused by any act or omission on the part of ADM.

11.    To the extent Plaintiff recovers damages from ADM, these damages should be offset against any amounts Plaintiff owes to ADM.

## RESERVATION OF RIGHTS

Plaintiff's Original Petition does not describe the claims alleged against ADM with sufficient particularity to enable ADM to determine all defenses it has to the counts alleged in Plaintiff's Original Petition. ADM does not waive any applicable defenses, and reserves the right to assert and rely upon any other applicable defenses that may become available or apparent during the course of this dispute. ADM further reserves the right to amend its answers as may be appropriate or necessary through discovery and investigation.

## COUNTERCLAIM

Comes now Defendant and Counter-Plaintiff Accelerated Digital Media, LLC ("ADM"), and files this Counterclaim against Plaintiff and Counter-Defendant Mangoceuticals, Inc. ("Mangoceuticals") and would show unto the Court as follows:

## A.    BACKGROUND

1.    This lawsuit arises out of a Master Services Agreement ("MSA") between Mangoceuticals and ADM. On October 16, 2023, Mangoceuticals and ADM entered into the MSA

9

wherein Mangoceuticals accepted ADM's digital marketing and digital paid media management services. A true and correct copy of the MSA is attached hereto as Exhibit "A" and is incorporated herein by reference.

Mangoceuticals agreed to the payment schedule for these services with a minimum fee of $10,000.00 per month. Exhibit "A," MSA, at p. 4. Under the terms of the MSA, fees which are not disputed in writing within 30 days of from the invoice date are deemed to be accepted and final. Exhibit "A," MSA, at p. 1. Fees which are not paid on the due date accrue late charges from the date the payment was due until the date it was paid, at a rate equal to 1.5% per month, or the maximum rate permitted by applicable law. Exhibit "A," MSA, at p. 1.

2.      Despite agreeing to these terms, Mangoceuticals failed to pay ADM the fees it was owed. Beginning with the March 2024 invoice, Mangoceuticals failed to pay to ADM the fees it owed for ADM's services. As of December 18, 2024, Mangoceuticals owed ADM a total of $83,224.93 in outstanding invoices and late fees. A true and correct copy of the outstanding invoices are collectively attached hereto as Exhibit "B" and are incorporated herein by reference. The table below reflects the amounts owed under each invoice including the late fees assessed as of December 18, 2024:

| Date | Invoice Number | Amount Due |
|---|---|---|
| 03/01/2024 | Invoice #1604 | $11,264.92 |
| 04/01/2024 | Invoice #1630 | $11,098.44 |
| 05/01/2024 | Invoice #1675 | $10,934.42 |
| 06/01/2024 | Invoice #1718 | $10,772.83 |
| 07/01/2024 | Invoice #1786 | $10,613.63 |

| | | |
|---|---|---|
| 08/01/2024 | Invoice #1823 | $10,456.78 |
| 09/01/2024 | Invoice #1885 | $10,302.25 |
| 10/01/2024 | Invoice #1933 | $7,781.66 |

Exhibit "B," Outstanding Invoices.

3.      ADM now requests this Court to compel Mangoceuticals to pay the amounts owed to ADM.

**B.      COUNTERCLAIM – Breach of Contract**

4.      ADM incorporates by reference all preceding paragraphs as though fully set out herein.

5.      The MSA is a valid and enforceable contract. ADM and Mangoceuticals entered into the MSA on October 16, 2023.

6.      ADM performed all of its obligations under the MSA and the applicable statements of work. Specifically, ADM provided digital marketing and digital paid media management services to Mangoceuticals as provided under the MSA and the applicable statements of work.

7.      Mangoceuticals breached the MSA by failing to pay ADM the amounts owed and agreed to under the MSA and the applicable statements of work.

8.      ADM suffered injury as a result of Mangoceuticals's breach. Specifically, as of December 18, 2024, outstanding invoices owed to ADM by Mangoceuticals totaled $83,224.93. Exhibit "B," Outstanding Invoices. These fees have continued to accrue late charges at the rate of 1.5%, or the maximum rate permitted by law, per month. Exhibit "A," MSA, at p. 1.

9.      ADM is entitled to payment of all amounts owed to it pursuant to the outstanding invoices.

**C.    COUNTERCLAIM – Account Stated in the alternative**

9.    ADM incorporates by reference all preceding paragraphs as though fully set out herein.

10.    The MSA describes the terms of the relationship between ADM and Mangoceuticals. Until March of 2024, Mangoceuticals paid the amounts of all invoices sent to it by ADM under the terms of the MSA and the applicable statements of work.

11.    Beginning in March of 2024, Mangoceuticals failed to pay ADM the invoices issued to it under the terms of the MSA and the applicable statements of work.

12.    Under the terms of the MSA, fees which are not paid on the due date accrue late charges from the date the payment was due until the date they are paid, at a rate equal to 1.5% per month, or the maximum rate permitted by applicable law. Exhibit "A," MSA, at p. 1.

13.    The account representing the amount owed to ADM is true and the balance of $83,224.93 is correct as of December 18, 2024. Exhibit "B," Outstanding Invoices.

14.    Under the MSA, Mangoceuticals agreed to pay these invoices to ADM as they became due.

**D.    COUNTERCLAIM – Quantum Meruit in the alternative**

15.    ADM incorporates by reference all preceding paragraphs as though fully set out herein.

16.    ADM provided digital marketing and digital paid media management services to Mangoceuticals. These services were of a measurable benefit to Mangoceuticals.

17.    These services were not provided gratuitously, but rather under the agreement that Mangoceuticals would compensate ADM at a minimum fee of $10,000.00 per month.

18.    Mangoceuticals accepted the benefit of these services.

19.     ADM is entitled to recover the reasonable value of work provided in accordance with these services.

20.     The reasonable value of the work performed by ADM for Mangoceuticals and remaining unpaid is at minimum $10,000 per month plus late charges of 1.5% per month.

**E.     COUNTERCLAIM – Unjust Enrichment in the alternative**

21.     ADM incorporates by reference all preceding paragraphs as though fully set out herein.

22.     Mangoceuticals has failed to compensate ADM for the services provided.

23.     By doing so, Mangoceuticals has unjustly retained a benefit to ADM's detriment.

24.     Mangoceuticals's retention of the benefit it received violates fundamental principles of justice, equity, and good conscience.

25.     ADM is entitled to recover the value of the benefit received and retained as a result of the services provided.

**F.     Request for Attorney's fees**

26.     ADM incorporates by reference all preceding paragraphs as though fully set out herein.

27.     The MSA permits recovery by ADM of all reasonable costs, including attorney's fees, incurred in collecting past due amounts owed by Mangoceuticals. Exhibit "A," MSA, at p. 1.

28.     Under the terms of the MSA, ADM is entitled to recover its reasonable and necessary attorney's fees incurred in this lawsuit from Mangoceuticals.

<u>**COUNTER JURY DEMAND**</u>

29.     Defendant demands a jury trial and hereby tenders the jury fee.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, ADM prays that Mangoceuticals take nothing by its suit and that the Court impose liability on Mangoceuticals for the counts raised herein. ADM further prays that it be granted such other and further relief, at law or in equity, to which it may show itself justly entitled.

DATED:  December 19, 2024

Respectfully submitted,

**DYKEMA GOSSETT PLLC**


By: */s/ Israel R. Silvas*
Christopher D. Kratovil
Texas Bar No. 24027427
CKratovil@dykema.com
Israel R. Silvas
Texas Bar No. 24051338
ISilvas@dykema.com
Daniel J. Hall
State Bar No. 24118946
DHall@dykema.com
Comerica Bank Tower
1717 Main Street, Suite 4200
Dallas, Texas 75201
Telephone:  (214) 462-6400
Facsimile:  (214) 462-6401

**ATTORNEYS FOR DEFENDANT
ACCELERATED DIGITAL MEDIA, LLC**

14

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing document was served upon all parties or counsel of record on December 19, 2024, in compliance with the Federal Rules of Civil Procedure.

*/s/ Israel R. Silvas*
Israel R. Silvas

# EXHIBIT A

# MASTER SERVICES AGREEMENT

This Master Services Agreement (this "**Agreement**"), dated as of ___10/16/2023___, 2023 (the "**Effective Date**"), is by and between Accelerated Digital Media, LLC a Delaware limited liability company with a location at 216 N May St, Unit 3A, Chicago, IL 60607 ("**Service Provider**"), and ___Mangoceuticals, Inc___, a ___Texas Corporation___ with a location at ___15110 Dallas Pkwy Ste 600 Dallas___ ("**Client**").

1.    <u>Services</u>.  During the Term (as defined below), Client hereby purchases from Service Provider, and Service Provider agrees to provide to Client, the services ("**Services**") described in any Statement of Work attached hereto which is signed by both parties (a "**Statement of Work**").  Statement of Work – No. 1 is attached hereto as <u>Exhibit A</u>.  In the event of any conflict between this Agreement and a Statement of Work, this Agreement shall govern except to the extent such Statement of Work includes language which expressly overrides conflicting language in this Agreement.

2.    <u>Fees</u>.  In consideration of Service Provider providing the Services, Client shall pay to Service Provider the fees specified in each Statement of Work (the "**Fees**") at the times specified in each such Statement(s) of Work.  Fees which are not disputed in writing within 30 days from the invoice date shall be deemed to be accepted and final.  Client shall also reimburse Service Provider for all reasonable, out-of-pocket travel and other expenses incurred in performing the Services.  Fees which are not paid on the date due shall accrue late charges from the date such payment was due until the date paid, at a rate equal to 1.5% per month, or the maximum rate permitted by applicable law. Client may not offset or withhold Fees due under this Agreement for any reason, and Client agrees to reimburse Service Provider for all reasonable costs (including attorney's fees) incurred in collecting past due amounts owed by Client.

3.    <u>Term and Termination</u>.  This Agreement shall remain in effect for so long as there is at least one active Statement of Work (the "**Term**").  Notwithstanding the foregoing, either party shall be entitled to terminate this Agreement immediately upon written notice to the other party in the event that (i) the other party makes an assignment for the benefit of creditors, suffers or permits the appointment of a receiver, trustee in bankruptcy, or similar official for any substantial part of its business or assets and/or avails itself or becomes subject to any bankruptcy proceeding or any procedure relating to insolvency or the protection of the rights of creditors and such action is not dismissed within 60 days; or (ii) the other party breaches any material term set forth herein (including an applicable Statement of Work) and fails to cure such breach within 30 days from the date of receipt of written notice thereof.  Upon termination of this Agreement, Client shall remit to Service Provider all fees and/or reimbursable expenses due and owing to Service Provider, and Service Provider shall provide to Client all deliverables identified in a Statement of Work in their then state of completion.  Sections 2 through 12 of this Agreement shall survive any termination of this Agreement.

4.    <u>Intellectual Property</u>.  All software, source code, trademarks, patents, copyrights, development tools, methods and other intellectual property rights owned by either party, or any third party and used by virtue of a license or other agreement, on the date hereof shall continue to be owned solely by such party, and except as set forth herein, nothing in this Agreement shall be deemed to confer any rights to any such intellectual property on the other party ("**Pre-Existing IP**").  In addition, all software, processes, code, portals, applications, modules, APIs, designs and/or other intellectual property which are created by Service Provider outside the scope of this Agreement and/or which are generally applicable to Service Provider's business and which do not include any confidential information of Client, including any improvement, enhancement, modification or derivative work of any of the foregoing (including Service Provider's Pre-Existing IP, "**Service Provider Materials**"), shall remain solely owned by Service Provider.  Upon full and final payment to Service Provider of all fees due and owing hereunder, any deliverables described as a "Deliverable" in a Statement of Work and provided by Service Provider to Client pursuant to such Statement of Work will become the property of Client, except to the extent that any such deliverables contain Service Provider Materials or third party intellectual property.  Client hereby licenses use of its name and trademarks to Service Provider to the limited extent necessary for Service Provider to carry out its responsibilities hereunder during the Term. Client represents and warrants that it has the right to provide Service Provider with the use of its Pre-Existing IP (including the use of its name and trademarks) to perform its responsibilities hereunder and agrees to indemnify and hold Service Provider harmless in connection with any third-party claims associated therewith.

1

5.    Confidentiality; Non-Solicit.

(a)    *Confidentiality*.  For purposes of this Agreement, "**Confidential Information**" shall mean confidential or proprietary information (whether in written, oral or electronic form) that: (i) is by its nature confidential; or (ii) is designated by that party as confidential; or (iii) the other party knows or ought to know is confidential.  Each party agrees to treat as confidential all Confidential Information of the other party, not to use such Confidential Information for any purpose other than to the limited extent necessary to perform under this Agreement and not to disclose such Confidential Information to any third party except as may be reasonably required pursuant to this Agreement.  Confidential Information shall not include (1) information already known to the receiving party, (2) information already in the public domain at the time of disclosure, (3) information disclosed to the receiving party by a third party not known by the receiving party to be in breach of any confidentiality obligation towards disclosing party, and/or (4) any information created by receiving party without reference to or use of the disclosing party's non-public information.  Notwithstanding the foregoing, Service Provider shall be entitled to list Client as a client and/or display Client's trademarks on Service Provider' website and/or in marketing or promotional materials.

(b)    *Non-Solicitation*.  Client shall not, at any time during the Term and for a period of 1 year thereafter, either directly or indirectly solicit, hire or engage any employee of Service Provider and/or any individual that was an employee of Service Provider at any time during the 2-year period immediately preceding the date of termination of this Agreement. In the event Client hires an employee of Service Provider in violation of this section, Client agrees to pay Service Provider as liquidated damages and not as a penalty, an amount equal to one year's base compensation for each such employee hired.

6.    Representations and Warranties.  Each party represents and warrants that: (i) it has the authority to enter into this Agreement and perform the services required of it hereunder; (ii) it will perform all services hereunder in a professional manner consistent with industry practices; and (iii) each party will comply with all applicable laws and regulations in carrying out its responsibilities hereunder.  **Except as explicitly set forth herein, neither party, nor either party's employees, affiliates, agents, suppliers, licensors nor the like, makes any warranties of any kind, either expressed or implied, including, without limitation, (a) warranties of merchantability or fitness for a particular purpose, or (b) as to the results that may be obtained by the other party by entering into this Agreement.**

7.    Limitation on Liability.  IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE OR CONSEQUENTIAL DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS OR DATA, ARISING OUT OF THIS AGREEMENT, WHETHER BASED IN CONTRACT, TORT OR ANY OTHER LEGAL THEORY, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.  IN ADDITION, EXCLUDING FEE PAYMENT OBLIGATIONS HEREUNDER THE AGGREGATE LIABILITY OF EITHER PARTY TO THE OTHER FOR ANY CLAIM HEREUNDER, RELATING TO THIS AGREEMENT OR OTHERWISE SHALL NOT EXCEED THE FEES PAID TO SERVICE PROVIDER HEREUNDER DURING THE 3-MONTH PERIOD IMMEDIATELY PRECEDING THE DATE ON WHICH THE APPLICABLE CLAIM AROSE.  THE FOREGOING LIMITATIONS SHALL NOT APPLY TO CLIENT'S BREACH OF THE LAST SENTENCE OF SECTION 4 OR SECTION 5(B) OF THIS AGREEMENT.

8.    Insurance.  Service Provider shall, during the Term, maintain insurance coverage in the amounts and types customarily maintained by similar situated businesses.

9.    Force Majeure.  Excluding payment obligations hereunder, neither party shall be liable to the other party for failure or delay in performing its obligations hereunder if such failure or delay is due to circumstances beyond its reasonable control including, without limitation, acts of any governmental body, war, insurrection, sabotage, embargo, fire, flood, strike or other labor disturbance, epidemic, pandemic, disease, interruption of or delay in transportation, unavailability of or interruption or delay in telecommunications or third party services, failure of third party software or inability to obtain raw materials, supplies or power.

10.    <u>Governing Law</u>.  The rights and obligations of the parties under this Agreement shall be governed by the laws of the State of Illinois, without reference to conflict of law principles.  Any legal suit, action or proceeding arising out of or relating to this Agreement shall be commenced in the federal or state courts in the County of Cook, Illinois, and each Party hereto irrevocably submits to the exclusive jurisdiction and venue of any such suit in any such suit, action or proceeding.

11.    <u>General.</u>  Service Provider will act at all times under this Agreement as an independent contractor, and nothing in this Agreement will be construed to create a partnership, joint venture or agency relationship between the parties.  This Agreement and any Statement of Work cannot be altered, amended or modified except in writing and executed by an authorized representative of each party.  This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and assigns and may not be assigned by either party, in whole or in part, without the express written consent of the other, which consent shall not be unreasonably withheld (provided, that either party shall be entitled to assign this Agreement without consent of the other party in connection with the sale by such party of substantially all of its assets, equity or business to a third party that also assumes its obligations hereunder).  Service Provider shall be entitled to subcontract portions of the Services to be performed hereunder to third parties, it being understood that Service Provider shall be responsible for actions taken by each such subcontractor hereunder.  This Agreement supersedes all prior written or oral agreements between the parties regarding the subject matter hereof (including any contradictory or additional language in any purchase order).  Client shall be responsible for all sales taxes, use taxes and any other similar taxes and charges of any kind imposed by any federal, state or local governmental entity on the transactions contemplated by this Agreement, excluding taxes based solely upon Service Provider's income derived hereunder.  This Agreement may be executed in counterparts and by facsimile or scanned .pdf, each of which shall constitute originals and all of which, when taken together, shall constitute the same original.  Any notice pursuant this Agreement shall be deemed effective when delivered in person or one day after sending such notice to the address listed above in this Agreement by reputable overnight courier with confirmation of next-day receipt.  If any provision of this Agreement is held to be unenforceable or invalid for any reason, or if any governmental agency rules that any portion of this Agreement is illegal or contrary to public policy, the remaining provisions, to the extent feasible, will continue in full force and effect with such unenforceable or invalid provision to be changed and interpreted to best accomplish its original intent and objectives. Under no circumstances is the Service Provider responsible for the reimbursement of any costs the client has paid to advertising platforms in the form of paid media, as the client will have received consideration for such costs in the form of advertising impressions on the ad platform. The client remains solely responsible for adherence to any professional responsibilities, rules, and standards of care that apply to the services provided and will defend, indemnify, and hold harmless the Service Provider for any claims arising out of the advertising client's provision of services.

Agreed and accepted as of the date first set forth above.

**Accelerated Digital Media, LLC**                    **Client Name:** Mangoceuticals, Inc

By: *Tellef Lundevall*                    By: *Jacob Cohen*
67965808FD824D6...                    6EA8F6FF350B4FD...

Print Name:      Tellef Lundevall          Print Name: Jacob Cohen

Title:      CEO                    Title: CEO

Date: 10/17/2023                    Date: 10/16/2023

**EXHIBIT A**

Statement of Work – No. 1

      This Statement of Work – No. 1 is attached to and made a part of the Master Services Agreement (the "**Agreement**") dated on or about <u>10/16/2023</u>, by and between Accelerated Digital Media, LLC, a Delaware limited liability company ("**Service Provider**"), and <u>Mangoceuticals, Inc</u> ("**Client**"). Capitalized terms used but not defined in this Statement of Work shall have the meaning ascribed to such terms in the Agreement.

**Project Overview:** Digital marketing and digital paid media management of Client's brand and products

**Key Dates:** The Statement of Work will take effect as of October 23rd, 2023. Renewal notice date is August 23rd, 2024. The first renewal term begins October 23rd, 2024. Ongoing renewal notice dates are August 23rd of the given year.

**Term:** The initial term of this statement of work is a 12 month commitment ("Initial Term"). Thereafter, this Statement of Work shall automatically renew on a 12 month basis (each, a "Renewal Term") unless either party provides notice of non-renewal in writing at least 60 days prior to the end of the then-current Initial Term or Renewal Term, as applicable. Client may not terminate this Statement of Work or any services described herein before the end of the then-current Initial Term or Renewal Term (as applicable) except to the extent permitted by the Agreement. Other than in connection with a breach by Service Provider that has not been cured within 30 days from the date of receipt of written notice thereof, if Client terminates this Statement of Work, any services described herein, or the Agreement prior to the end of the then-current Initial Term or Renewal Term (as applicable), Client shall remain obligated to pay Service Provider for the remainder of the Term at a rate equal to the average invoiced amount for the prior six month period (or such shorter period if the engagement was less than six months).

**Services to be Provided:** Service Provider will provide digital marketing and digital paid media management on behalf of Client as Client's exclusive service provider of digital paid media during the Term for Google (Alphabet) Ads & Meta Ads. Client is eligible for additional services such as paid media management on platforms which include but are not limited to Google; Facebook (Meta); Amazon; Pinterest; TikTok; Snap; Microsoft; Programmatic DSP.

**Reporting:** Service Provider will maintain open lines of communication with Client, offer weekly phone calls, and deliver monthly reports. Monthly performance reports will be shared on the first business day of each month.

**Case Study:** Service Provider has the right to execute and publish case studies on their work with Client. Case studies may contain data regarding the partnership, data will be expressed with relativity, protecting any proprietary information regarding scale or specific values.

**Billing & Fees:** Service Provider will bill in advance the cost of the upcoming month's retainer, consisting of media management (minimum fee of $10,000/month) and User Generated Content, so long as UGC services are engaged. UGC services can be activated and deactivated with email confirmation from both parties. If the amount due for a month exceeds the retainer amount based on total actual media spend (per the below table) across all platforms, such excess charges shall be added to the following month's invoice (in addition to the standard retainer for such following month) and must be paid within 30 days or Service Provider shall be entitled to suspend services until such time as the outstanding charges are paid in full.

The onboarding fee of $3,500 will be billed at the outset of the engagement and is due by launch date. The invoice must be paid before the commencement of the partnership. Client may pay invoices via ACH, check, or credit card. If credit card is selected as the payment option, a 3% fee will be added to the invoice. Invoices are based on the below fee schedule, subject to change per written confirmation from both parties; provided that, in no instance shall a monthly invoice be less than 50% of the average invoice issued to Client over the prior six months. For programmatic line items, ADM purchases and deploys programmatic media on behalf of Client. Service Provider will bill in advance the cost of the upcoming programmatic media buy which is agreed upon in writing by both parties (email sufficient). These invoices will be noted as reimbursable media and must be paid in full by Client before the agreed upon media buy is deployed by Service Provider.

Upon receipt of the onboarding fee, Service Provider will provide Data & Analytics work (tagging, analytics, automated reporting) for no additional cost in the first month of the partnership. Following the first month, Service Provider's Data & Analytics team will support Client for up to 3 hours per month. Any overages to this 3 hour limit will be billed at $195 / hr. Hours do not rollover month-to-month.

*SEM, Paid Social, and Programmatic media management are billed monthly at the greater between $10,000 and the following rates.*

| All Channels | % of Spend | Spend Band Minimum. |
|---|---|---|
| $0 - $100K | 12% | $10,000 |
| $100K - $250K | 10% | $12,000 |
| $250K - $500K | 9% | $25,000 |
| $500K - $750K | 7% | $45,000 |
| $750K - $1MM | 6% | $52,500 |
| $1MM - $1.5MM | 5% | $60,000 |
| $1.5MM - $2MM | 4.50% | $75,000 |
| $2MM+ | 3% | $90,000 |

*User Generated Content Pricing (Applicable upon written confirmation from Client)*

- $1,500 For First 3 Videos
- $600 Per Video Thereafter

**Amendments:** Amendments to the fee schedule, additional services, or other changes to this SOW may be put in place following written confirmation from both parties.

**Budget:** Budget will be dictated by Client.

IN WITNESS WHEREOF, the parties hereto have caused this Statement of Work – No. 1 to be duly executed and delivered as of the latest date set forth below.

**Accelerated Digital Media, LLC**

By *Tellef Lundevall*
— 67965808FD824D6...

Print Name:     Tellef Lundevall

Title:     CEO

Date: 10/17/2023

**Client Name:** Mangoceuticals, Inc

By: *Jacob Cohen*
— 6EA8F6FF350B4FD...

Print Name: Jacob Cohen

Title: CEO

Date: 10/16/2023

# EXHIBIT B

# Invoice  1604

**Accelerated Digital Media**
76 Lakewood Pl
Highland Park, IL  60035
+18477906437
tl@accelerateddigitalmedia.com



**Accelerated Digital Media**

---

**BILL TO**
MangoRx

| DATE | PLEASE PAY | DUE DATE |
|------|-----------|----------|
| 03/01/2024 | **$11,264.92** | 03/31/2024 |

| DATE | DESCRIPTION | QTY | RATE | AMOUNT |
|------|-------------|-----|------|--------|
| | Management - March | 1 | 10,000.00 | 10,000.00 |
| | Late Fees - 4/30 | 0.015 | 10,000.00 | 150.00 |
| | Late Fees - 5/30 | 0.015 | 10,150.00 | 152.25 |
| | Late Fees - 6/30 | 0.015 | 10,302.25 | 154.53 |
| | Late Fees - 7/31 | 0.015 | 10,456.78 | 156.85 |
| | Late Fees - 8/31 | 0.015 | 10,613.63 | 159.20 |
| | Late Fees - 9/30 | 0.015 | 10,772.83 | 161.59 |
| | Late Fees - 10/31 | 0.015 | 10,934.42 | 164.02 |
| | Late Fees - 11/30 | 0.015 | 11,098.44 | 166.48 |

**TOTAL DUE** $11,264.92

THANK YOU.

Bank Name: JP Morgan Chase
Account Name: Accelerated Digital Media
Routing Number ACH: 072000326
Account Number: 116808376
Invoicing Questions - nate@navigatingyourbooks.com

**Accelerated Digital Media**
76 Lakewood Pl
Highland Park, IL 60035
+18477906437
tl@accelerateddigitalmedia.com

# Invoice 1630



**Accelerated Digital Media**

---

**BILL TO**
MangoRx

| DATE | PLEASE PAY | DUE DATE |
|------|------------|----------|
| 04/01/2024 | **$11,098.44** | 05/01/2024 |

| DATE | DESCRIPTION | QTY | RATE | AMOUNT |
|------|-------------|-----|------|--------|
| | Management - April | 1 | 10,000.00 | 10,000.00 |
| | Late Fee 5/31 | 0.015 | 10,000.00 | 150.00 |
| | Late Fees 6/30 | 0.015 | 10,150.00 | 152.25 |
| | Late Fees 7/31 | 0.015 | 10,302.25 | 154.53 |
| | Late Fees 8/31 | 0.015 | 10,456.78 | 156.85 |
| | Late Fees 9/30 | 0.015 | 10,613.63 | 159.20 |
| | Late Fees 10/31 | 0.015 | 10,772.83 | 161.59 |
| | Late Fees 11/30 | 0.015 | 10,934.42 | 164.02 |

**TOTAL DUE** $11,098.44

THANK YOU.

Bank Name: JP Morgan Chase
Account Name: Accelerated Digital Media
Routing Number ACH: 072000326
Account Number: 116808376
Invoicing Questions - nate@navigatingyourbooks.com

**Accelerated Digital Media**
76 Lakewood Pl
Highland Park, IL  60035
+18477906437
tl@accelerateddigitalmedia.com

**Invoice  1675**

**ADM**
**Accelerated Digital Media**

**BILL TO**
MangoRx

| DATE | PLEASE PAY | DUE DATE |
|---|---|---|
| 05/01/2024 | **$10,934.42** | 05/31/2024 |

| DATE | DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| | Management - May | 1 | 10,000.00 | 10,000.00 |
| | Late Fees - 6/30 | 0.015 | 10,000.00 | 150.00 |
| | Late Fees - 7/31 | 0.015 | 10,150.00 | 152.25 |
| | Late Fees - 8/31 | 0.015 | 10,302.25 | 154.53 |
| | Late Fees - 9/30 | 0.015 | 10,456.78 | 156.85 |
| | Late Fees - 10/31 | 0.015 | 10,613.63 | 159.20 |
| | Late Fees - 11/30 | 0.015 | 10,772.83 | 161.59 |

| TOTAL DUE | $10,934.42 |
|---|---|

THANK YOU.

Bank Name: JP Morgan Chase
Account Name: Accelerated Digital Media
Routing Number ACH: 072000326
Account Number: 116808376
Invoicing Questions - nate@navigatingyourbooks.com

**Accelerated Digital Media**
76 Lakewood Pl
Highland Park, IL  60035
+18477906437
tl@accelerateddigitalmedia.com

**Invoice  1718**

# ADM
## Accelerated Digital Media

**BILL TO**
MangoRx

| DATE | PLEASE PAY | DUE DATE |
|------|------------|----------|
| 06/01/2024 | **$10,772.83** | 07/01/2024 |

| DATE | DESCRIPTION | QTY | RATE | AMOUNT |
|------|-------------|-----|------|--------|
| | Management - June | 1 | 10,000.00 | 10,000.00 |
| | Late Fees - 7/31 | 0.015 | 10,000.00 | 150.00 |
| | Late Fees - 8/31 | 0.015 | 10,150.00 | 152.25 |
| | Late Fees - 9/30 | 0.015 | 10,302.25 | 154.53 |
| | Late Fees - 10/31 | 0.015 | 10,456.78 | 156.85 |
| | Late Fees - 11/30 | 0.015 | 10,613.63 | 159.20 |

**TOTAL DUE**          **$10,772.83**

THANK YOU.

Bank Name: JP Morgan Chase
Account Name: Accelerated Digital Media
Routing Number ACH: 072000326
Account Number: 116808376
Invoicing Questions - nate@navigatingyourbooks.com

**Accelerated Digital Media**
76 Lakewood Pl
Highland Park, IL  60035
+18477906437
tl@accelerateddigitalmedia.com

**Invoice  1786**

**Accelerated Digital Media**

**BILL TO**
MangoRx

| DATE | PLEASE PAY | DUE DATE |
|------|------------|----------|
| 07/01/2024 | **$10,613.63** | 07/31/2024 |

| DATE | DESCRIPTION | QTY | RATE | AMOUNT |
|------|-------------|-----|------|--------|
| | Management - July | 1 | 10,000.00 | 10,000.00 |
| | Late Fees - 8/31 | 0.015 | 10,000.00 | 150.00 |
| | Late Fees - 9/30 | 0.015 | 10,150.00 | 152.25 |
| | Late Fees - 10/31 | 0.015 | 10,302.25 | 154.53 |
| | Late Fees - 11/30 | 0.015 | 10,456.78 | 156.85 |

**TOTAL DUE**          **$10,613.63**

THANK YOU.

Bank Name: JP Morgan Chase
Account Name: Accelerated Digital Media
Routing Number ACH: 072000326
Account Number: 116808376
Invoicing Questions - nate@navigatingyourbooks.com

**Accelerated Digital Media**
76 Lakewood Pl
Highland Park, IL  60035
+18477906437
tl@accelerateddigitalmedia.com

# Invoice  1823

**Accelerated Digital Media**

**BILL TO**
MangoRx

| DATE | PLEASE PAY | DUE DATE |
|------|------------|----------|
| 08/01/2024 | **$10,456.78** | 08/31/2024 |

| DATE | DESCRIPTION | QTY | RATE | AMOUNT |
|------|-------------|-----|------|--------|
| | Management - August | 1 | 10,000.00 | 10,000.00 |
| | Late Fees - 9/30 | 0.015 | 10,000.00 | 150.00 |
| | Late Fees - 10/31 | 0.015 | 10,150.00 | 152.25 |
| | Late Fees - 11/30 | 0.015 | 10,302.25 | 154.53 |

**TOTAL DUE**      **$10,456.78**

THANK YOU.

**Accelerated Digital Media**
76 Lakewood Pl
Highland Park, IL  60035
+18477906437
tl@accelerateddigitalmedia.com

## Invoice  1885

**ADM**
**Accelerated Digital Media**

**BILL TO**
MangoRx

| DATE | PLEASE PAY | DUE DATE |
|------|------------|----------|
| 09/01/2024 | **$10,302.25** | 10/01/2024 |

| DATE | DESCRIPTION | QTY | RATE | AMOUNT |
|------|-------------|-----|------|--------|
| | Management - September | 1 | 10,000.00 | 10,000.00 |
| | Late Fees - 10/31 | 0.015 | 10,000.00 | 150.00 |
| | Late Fees - 11/30 | 0.015 | 10,150.00 | 152.25 |

| | |
|---|---|
| TOTAL DUE | $10,302.25 |

THANK YOU.

Bank Name: JP Morgan Chase
Account Name: Accelerated Digital Media
Routing Number ACH: 072000326
Account Number: 116808376
Invoicing Questions - nate@navigatingyourbooks.com

**Accelerated Digital Media**
76 Lakewood Pl
Highland Park, IL  60035
+18477906437
tl@accelerateddigitalmedia.com

# Invoice  1933

**Accelerated Digital Media**

**BILL TO**
MangoRx

| DATE | PLEASE PAY | DUE DATE |
|---|---|---|
| 10/01/2024 | **$7,781.66** | 10/31/2024 |

| DATE | DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| | Management - October<br>October 1-23, 2024 | 1 | 7,666.66 | 7,666.66 |
| | Late Fees - 11/30 | 0.015 | 7,666.66 | 115.00 |

**TOTAL DUE**   **$7,781.66**

THANK YOU.

Bank Name: JP Morgan Chase
Account Name: Accelerated Digital Media
Routing Number ACH: 072000326
Account Number: 116808376
Invoicing Questions - nate@navigatingyourbooks.com